Steward *v.* Allen.

## STEWARD *vs.* ALLEN.

If a creditor extend his execution on land mortgaged for more than its value, he not in fact knowing the existence of the mortgage, though it had been long on record; he may have an *alias* execution, and satisfaction out of other estate of the debtor; the case being within the meaning of *Stat.* 1823, *ch.* 210.

Though a plea admit the registry of an adverse title deed, yet it may, in proper cases, well aver the want of actual knowledge of the existence of the deed; and the fact will be well pleaded.

Where a *scire facias* is brought to have a new execution upon a judgment of the Court of Common Pleas, the land extended upon not having belonged to the debtor; and judgment is rendered in this Court for the plaintiff; the Clerk issues an *alias* execution from the Court of Common Pleas to satisfy the former judgment in that Court; and an execution from this Court for the costs of the *scire facias.*

THE plaintiff having had judgment against the defendant in a former suit, caused his execution to be extended *Sept.* 20, 1819, on land which he supposed to be the unincumbered estate of the debtor. But finding afterwards that it was under mortgage for its full value, he sued out the present *scire facias*, pursuant to the statute, alleging that the land extended upon was not the debtor's, and requiring him to shew cause why the creditor should not have a new execution.

The defendant pleaded in bar that the land belonged to him at the time of the extent. To this the plaintiff replied that on the 23d day of *July* 1818, by a deed registered *Oct.* 30, 1818, the defendant mortgaged the same land to one *Farrar*, for a sum exceeding its true value; which sum then was and still is justly due, and wholly unpaid; the existence of which mortgage, at the time of the extent, was in fact not known, either to himself, or to the appraisers. The defendant hereupon demurred in law.

*Cutler*, in support of the demurrer, said that the statute of 1823, *ch.* 210, gave this remedy only in cases where the land extended upon did not belong to the debtor. But the title to mortgaged lands

is in the mortgagor, as against all the world but the mortgagee. *Wellington v. Gale* 7. *Mass.* 139. *Goodwin v. Richardson* 11. *Mass.* 473. The mortgagee has nothing in the land which his creditors can seize, until he has entered for condition broken; which, in this case, has never been done. *Blanchard v. Coburn* 16. *Mass.* 345.

By the extent, the creditor acquired all the estate of the mortgagor, as effectually as if his right in equity of redemption had been seized and sold on execution, pursuant to the statute. *White v. Bond* 16. *Mass.* 400. The plaintiff, therefore, has now the right to redeem the land; and he alone can sustain, in his own name, a bill in equity for that purpose. He has divested the debtor of his estate.

The averment that the mortgage was in fact unknown to the plaintiff at the time of the extent, is not well pleaded. He did know to all legal intents, because he was bound to know, that the land was mortgaged, the deed having been registered nearly a year. He therefore elected to take the right in equity of redemption by extent, without deduction for the incumbrance, which he had a right to do; and his execution is satisfied. *Putnam & al. v. Pratt* 13. *Mass.* 363. Whether he acted wisely or not, is not now the question.

*W. W. Fuller*, for the plaintiff, insisted that the land did not belong to the debtor, within the meaning of the statute. The whole estate passed to the mortgagee, as between him and the mortgagor, whom the plaintiff represents; and the latter had nothing but a bare right remaining, without an interest; the land being mortgaged for more than its value. The intent of the legislature was to provide a remedy for cases where the judgment creditor acquired nothing, by his extent, but the shadow of satisfaction; the debtor having nothing more than the semblance of title to the land. And such was the present case. The mortgagor remained in possession; but his possession, at best, was but calculated to deceive. He knew the facts. The creditor did not. And his silence was a fraud, of which he ought not to take advantage. The case of *White v. Bond*, cited on the other side, turned on the election of the creditor to take the land subject to the mortgage, knowing its existence. In *Warren v. Childs* 11. *Mass.* 222. the levy was not held good as a levy on an equity of redemption.

Steward *v.* Allen.

As to the want of notice in fact ; the record is only presumptive notice, by which neither party is estopped, in equity. And this is, in effect, a proceeding in equity, analogous to a bill and subpœna. The *scire facias* calls on the debtor to shew cause why the debt should not be paid, out of his own property ; and no such cause is shown. The defence amounts to this, that the plaintiff not having yet received the fruit of his judgment, shall be held satisfied with the shadow.

But this remedy exists at common law, independent of the statute. The *Stat.* 32. *Hen.* 8 *ch.* 5. which was in force, and applicable to the wants of this country, at the time of its first settlement, and so became part of its common law, authorizes the issuing of a *scire facias* and execution against other lands of the debtor, where those originally taken are recovered, divested, &c. It lies in all cases to reanimate a judgment supposed to be satisfied ; and its only object is to carry the original suit into effect. 2. *Tidd's Pr.* 950. 2. *Sellon's Pr.* 187.

MELLEN C. J. delivered the opinion of the Court.

From the pleadings in this case, terminating in a general demurrer to the replication, it appears that the premises on which the plaintiff caused his execution to be extended in the usual form, and by virtue of which extent, he, at the time, supposed he had acquired a complete title thereto, had been several months prior to that time conveyed in fee and in mortgage to *Farrar* to secure the payment of a sum of money exceeding the true and just value of the same estate ; which mortgage now remains in full force ; the said debt being wholly unpaid. It further appears that at the time of the levy, though said mortgage deed was recorded soon after its date, the plaintiff had no actual knowledge of its existence, and of course no reference was had to it in the appraisement of the premises. Under these circumstances is the plaintiff entitled to an *alias* execution, on the ground of failure or want of title in the defendant, at the time of the levy ?

The provision of the statute of 1823, *ch.* 210, is in these words : " That whenever any execution has been or may be extended and

14

levied upon real estate, for the purpose of satisfying the same ; and after such levy it shall appear that the real estate thus levied upon did not belong to the debtor, upon application to the court that issued the execution, they are authorised to issue an *alias* execution." The above mentioned act is a transcript of the statute of Massachusetts of 1798, *ch.* 77, *sec.* 4.   It is true, that as between the mortgagor and strangers, or third persons, he is considered as owner of the fee ; though as between him and the mortgagee, the fee is considered to be in the latter ; still, in estimating the value of the mortgagor's estate or interest, it can only be viewed in the light of an equity of redemption ; and such was the defendant's interest at the time of the levy. By the act of 1821, *ch.* 60, *sec.* 17,(which is a transcript of the statute of Massachusetts on the same subject) an equity of redemption is to be sold at auction like personal estate.   It is true, it seems to be settled by the cases of *Warren v. Childs* and *White v. Bond,* cited in the argument, that lands under mortgage may be taken by appraisement, where no deduction is made on account of such incumbrance, and the levy be effectual.   In both the cases above mentioned the court proceed upon the ground that the creditor knew of the existence of the mortgage.   In *Warren v. Childs,* the Chief Justice speaks of the effect of the levy, " supposing the judgment creditor willing to lose the value of the incumbrance, and to take the estate as absolute in the debtor ;" and in *White v. Bond,* the Chief Justice observes that " if under such circumstances the creditor chooses to proceed in this manner." the levy may be good and operate as an assignment to him of the equity of redemption.   As before observed, actual knowledge of the incumbrance is presupposed ; or else the expressions " willing to lose" and " choosing to proceed," were improperly used by the Court, and this we can by no means presume.

But it has been urged that inasmuch as it appears by the replication that the mortgage was on record many months before the levy, it was not competent for the plaintiff to aver his actual ignorance of its existence ; and so, not being well pleaded, this fact is not admitted by the demurrer.   Generally speaking, the constructive knowledge of a deed, resulting from the record of it, is equivalent to actual knowledge, in its effects upon subsequent conveyances ; but to some

purposes there is a material difference between them.    We therefore think the want of actual knowledge is well pleaded, although the same replication discloses the existence of the record furnishing the evidence of constructive knowledge.    A levy on lands under mortgage cannot be effectual, unless voluntarily made with actual knowledge of the incumbrance, and without any deduction on account of it.

We now proceed to another point, and that is whether, according to the facts admitted by the demurrer, the defendant had such an interest and title in and to the premises, as that they could be said to "belong to him," according to the true intent and meaning of the statute ; which, being a remedial one, is entitled to a liberal construction for the advancement of right and justice.    It is expressly averred and admitted that the lands were mortgaged to *Farrar* for more than their just and true value ; of course the right in equity of redeeming them was of no value whatever ; and could not have been, whether sold at auction or taken by appraisement.    Under such circumstances the land could not be said to belong to the defendant, in such a sense as the statute intended ; for the plaintiff could not by any possibility avail himself of it, or derive any advantage from it ; because he could not remove the incumbrance of the mortgage, except by paying more than its value.    The only rational and consistent construction of the statute, and which will answer the purposes of justice as contemplated by the legislature, seems to be that which we have given.

It has been said that the plaintiff has made his election ; and afterwards, having discovered that he had made an injudicious bargain, now wishes to correct his own miscalculations at the expense, and to the injury, of the defendant, whose right of redemption he has taken away. But all foundation for this argument vanishes, when we advert to the fact that the plaintiff was ignorant of the existence of the mortgage, and therefore was incapable of making an election, as the argument supposes. It seems by the two cases cited from the 12 and 14 *Mass.* that in such a case as this, an action of debt would lie on the judgment, by reason of the failure of the supposed title ; and why should not the plaintiff have the remedy he now seeks ?    No part of the judgment has been satisfied by the defendant ; and justice demands

that he should satify it. We therefore adjudge the replication to be good and sufficient in law. The plaintiff is entitled to an *alias* execution, as prayed for, for the sum due on the judgment; and the clerk, as clerk of the Court of Common Pleas, is authorized and directed to issue such *alias* execution; and the plaintiff is also entitled to his costs in this process, for which judgment is to be entered; and for such costs, a writ of execution will issue from this court.